UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ELLEN OGAIAN, Individually and on            :
Behalf of All Other Persons Similarly Situated,   :      1:12-cv-1273-PAC
                                             :
            Plaintiffs,                      :
                                             :
            -against-                        :
                                             :
CHRISTMAS TREE SHOPS, INC.                   :
                                             :
            Defendant.                       :
-----------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT OF COLLECTIVE AND CLASS ACTION**

Seth R. Lesser                          Jonathan L. Sulds
Fran L. Rudich                          GREENBERG TRAURIG, LLP
Michael J. Palitz                       MetLife Building
KLAFTER OLSEN & LESSER LLP              200 Park Avenue
Two International Drive, Suite 350       New York, New York 10166
Rye Brook, New York 10573               Telephone:   (212) 801-9200
Telephone:   (914) 934-9200             Facsimile:   (212) 801-6400
Facsimile:   (914) 934-9220

*Attorneys for Plaintiff and Settlement Classes*      *Attorneys for Defendant*

Other Counsel Listed on Signature Page

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

SUMMARY OF THE SETTLEMENT TERMS ................................................................. 3

    I.    The Settlement Classes ................................................................................. 3

    II.   The Settlement Fund .................................................................................... 5

    III.  Releases ........................................................................................................ 6

    IV.  Class Certification ........................................................................................ 6

    V.   Allocation Formula ...................................................................................... 6

    VI.  Attorneys' Fees and Costs ........................................................................... 7

    VII. Service Payments to the Plaintiff and Opt-in Garrido ................................. 7

    VIII. Settlement Claims Administrator ................................................................ 8

CLASS ACTION SETTLEMENT PROCEDURE ............................................................. 8

ARGUMENT ...................................................................................................................... 10

    I.    The Court Should Grant Preliminary Approval of the Proposed Settlement ................ 10

        A.    The Legal Standards for Preliminary Approval……………………………….10

        B.    The Proposed Settlement Is Fair, Reasonable, and Adequate Considering the Complexity, Expense, and Likely Duration of the Litigation, the Stage of the Proceedings, and the Amount of Discovery Completed……..……………13

            1.    Complexity, Expense, and Likely Duration of the Litigation ...................... 13

            2.    Stage of Proceedings and Amount of Discovery Completed. ..................... 15

        C.    The Proposed Settlement Is Fair, Reasonable, and Adequate Given the Risks of Establishing Liability and Damages, and Maintaining the Class Through Trial. ..................................................................................... 15

        D.    Establishing a Class and Maintaining it Through Trial Would Not Be Simple…………………………………………………………………..………17

E.   The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation.  The "Ability of Defendants to Withstand a Greater Judgment" and the "Reasonableness of the Proposed Settlement" Factors Support Approval of the Proposed Settlement....………………………17

II.   The Classes Should Be Certified For Settlement Purposes ........................................... 18

A.   The Rule 23(a) Factors Are Met……………………………………………19

1.   Numerosity................................................................................... 19

2.   Commonality and typicality........................................................... 20

3.   Adequacy. .....................................................................................20

B.   The Rule 23(b)(3) Factors Are Met……………………………………...22

III.   The Proposed Notice to the Class Members is Adequate and Satisfies Due Process…………………………………………………………...............24

IV.   Plaintiff's Counsel Should Be Appointed Class Counsel ........................................... 25

CONCLUSION............................................................................................................ 26

## TABLE OF AUTHORITIES

**Cases**

*Achtman v. Kirby, McInerney Squire*, 464 F.3d 328 (2d Cir. 2006).............................................. 24

*Alli v. Boston Mkt. Corp.*, No. 10-cv-0004 (D. Conn. Apr. 12, 2012) ........................................... 7

*Amchem v. Windsor Prods.*, 521 U.S. 591 (1997) ................................................................. 22,23

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000).......................... 21

*Cabrera v. 211 Garage Corp.*, 2008 U.S. Dist. LEXIS 67050 (S.D.N.Y. Aug. 22, 2008).........19

*Capsolas v. Pasta Res., Inc.*, 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012)…………7

*Caridad v. Metro-N. Commuter R.R.*, 191 F. 3d 283 (2d Cir. 1999).......................................... 21

*Castagna v. Madison Square Garden*, L.P., 2011 U.S. Dist. LEXIS 64218
   (S.D.N.Y. June 7, 2011)................................................................................................. 10

*Central States Southeast v. Merck-Medco*, 504 F.3d 229 (2d Cir. 2007) .................................... 20

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)........................................................................ 20

*Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209 (S.D.N.Y. 1992)............................. 11

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)……………………………..12, 18

*Clark v. Ecolab*, 2009 U.S. Dist. LEXIS 76613
   (S.D.N.Y. May 11, 2010)……………………………………………………………..7, 11

*Cnty. of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422 (E.D.N.Y. 1989)......................... 19

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91 (2d Cir. 2007)........ 22

*Cruz v. Lyn-Rog Inc.*, 754 F. Supp. 2d 521 (E.D.N.Y. 2010)……………………………………18

*deMunecas v. Bold Food, LLC*,  2010 U.S. Dist. LEXIS 87644 (S.D.N.Y. Aug. 23, 2010).......... 7

*Duchene v. Michael Cetta, Inc.*, 2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009)……...7

*Faican v. Rapid Park Holding Corp.*, 2010 U.S. Dist. LEXIS 64382 (E.D.N.Y. June 29, 2010)..7

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) .......................................... 22, 23

*Gilliam v. Addicts Rehab. Ctr. Fund,* 2008 U.S. Dist. LEXIS 23016
(S.D.N.Y. Mar. 24, 2008)……………………………………………………………..7

*Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000)................................. 12

*Goldstein v. North Jersey Trust Co.,* 39 F.R.D. 363 (S.D.N.Y. 1966) ......................... 20

*Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203 (6th Cir. 1992) ......................... 16

*Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir. 1968) ...................................................... 23

*In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145 (2d Cir. 1987)………………...............20

*In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ..... ..13, 15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 574 F.3d 29 (2d Cir. 2009)................................. 21

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Litig.,* 55 F.3d 784 (3d Cir. 1995)............... 19

*In re IPO Sec. Litig.,* 243 F.R.D. 79 (S.D.N.Y. 2007).................................................... 11

*In re Ivan F. Boesky Sec. Litig.,* 948 F.2d 1358 (2d Cir. 1991).................................... 11

*In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088 (5th Cir. 1977) ................................... 24

*In re RJR Nabisco Sec. Litig.,* 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) .......... 16

*In re Sumitomo Copper Litig.,* 189 F.R.D. 274 (S.D.N.Y. 1999) ................................. 11

*In re Traffic Exec. Ass'n,* 627 F.2d 631 (2d Cir. 1980)…………………………………………11

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,* 718 F. Supp. 1099
(S.D.N.Y. 1989)............................................................................................... 18

*In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124 (2d Cir. 2001)............................ 21

*In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516 (3d Cir. 2004)................................. 10, 15

*In re Warner Commun. Sec. Litig.,* 798 F.2d 35 (2d Cir. 1986) ........................................ 11, 16

*Johnson v. Brennan,* 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011)........................ 7

*Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir. 1982) ................................ 12

*Marisol A. v. Guiliani,* 126 F.3d 372 (2d Cir. 1997) ...................................................... 20

*Masters v. Wilhelmina Model Agency, Inc.,* 473 F. 3d 423 (2d Cir. 2007) ................................. 24

*Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072 (2d Cir. 1998) ............................... 11

*McBean v. City of New York*, 228 F.R.D. 487 (S.D.N.Y. 2005)..................................................... 22

*McMahon v. Olivier Cheng Catering and Events,* 2009 U.S. Dist. LEXIS  18913
    (S.D.N.Y. Mar. 2, 2010)………………………………………………………………7, 12

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,* 2009 U.S. Dist. LEXIS 27899
    (S.D.N.Y. Mar. 31, 2009)………………………………………………………….....7, 12

*Newman v. Stein,* 464 F.2d 689 (2d Cir. 1972)............................................................................ 17

*Oppenlander v. Standard Oil Co.,* 64 F.R.D. 597 (D. Colo. 1974) ............................................. 17

*Parker v. Jekyll & Hydye Entm't Holdings., L.L.C.,* 2010 U.S. Dist. LEXIS 12762
    (S.D.N.Y. Feb 9, 2009).............................................................................................................. 7

*Polar Int'l Brokerage Corp. v. Reeve,* 187 F.R.D. 108 (S.D.N.Y. 1999)..................................... 10

*Prasker v. Asia Five Eight LLC*, 2010 U.S. Dist. LEXIS 1445 (S.D.N.Y. Jan. 4, 2010)  ............. 7

*Priddy v. Edelman*, 883 F.2d 438 (6th Cir. 1989)........................................................................ 16

*Republic Nat'l Life Ins. Co. v. Beasley,* 73 F.R.D. 658 (S.D.N.Y. 1970).................................... 18

*Reyes v. Altamarea Grp.,* 2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011).................. 7

*Reyes v. Buddha-Bar NYC*, 2009 U.S. Dist. LEXIS 45277 (S.D.N.Y. May 28, 2009)…………..7

*Rodolico v. Unisys Corp.*, 199 F.R.D. 468 (E.D.N.Y. 2001)........................................................ 19

*Saylor v. Lindsley,* 456 F.2d 896 (2d Cir. 1972)........................................................................ 18

*Sewell v. Bovis Lend Lease LMB, Inc*., 2012 U.S. Dist. LEXIS 53556
    (S.D.N.Y. Apr. 16, 2012)............................................................................................................ 7

*Spicer v. Pier Sixty LLC*, 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012)……………7

*Stefaniak v. HSBC Bank USA*, 2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008)…...7, 12

*Stieberger v. Sullivan,* 792 F. Supp. 1376 (S.D.N.Y. 1992) ....................................................... 13

*Strougo v. Bassini,* 258 F. Supp. 2d 254 (S.D.N.Y. 2003) .................................................... 16, 17

*Toure v. Cent. Parking Sys.*, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007) .............. 21

*Trief v. Dun & Bradstreet Corp.,* 840 F. Supp. 277 (S.D.N.Y. 1993) .......................................... 11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96 (2d Cir. 2005) ................................... 10, 24

*Westerfield v. Wash. Mut. Bank*, 2009 U.S. Dist. LEXIS 94544 (E.D.N.Y. Oct. 2, 2009) ........... 7

*Wolfert v. Transamerica Home First*, 439 F.3d 165 (2d Cir. 2006) ............................................ 24

**Statutes**

29 U.S.C. § 216(b) ...................................................................................................................... 18

28 U.S.C. § 1715 ........................................................................................................................... 9

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................. *passim*

**Other Authorities**

Herbert B. Newberg & Alba Conte, Newberg on Class Actions (4th ed. 2002). ........... *passim*

Manual for Complex Litigation (Fourth) (2004) ................................................................. 10

## <u>INTRODUCTION</u>

After over 18 months of litigation that has exacted time, effort, and resources from the parties on both sides of this dispute, named Plaintiff Ellen Ogaian and Defendant Christmas Tree Shops, Inc. (the "Defendant" or "Christmas Tree") have agreed to settle this lawsuit.  The Parties have worked to achieve this result by a comprehensive process of meeting and conferring throughout the litigation, conducting discovery, conducting a mediation before the Hon. Kathleen Roberts of JAMS, and negotiating at arms-length to structure the settlement now proposed to the Court.

Under this negotiated settlement, Plaintiff and members of the proposed Settlement Classes will release all overtime-related Fair Labor Standards Act ("FLSA") and various state law wage and hour claims.  In exchange for this release, and subject to the conditions set out in the settlement agreement, Defendant has agreed to pay a total settlement amount not to exceed $1,340,000.00.  Plaintiff's Counsel, experienced in wage and hour collective and class litigation, believe that the proposed settlement is fair and adequate to their clients and to members of the Settlement Classes.

As is the case with virtually every true compromise, this settlement is not a complete victory for either side, but is, instead, the product of hard-fought litigation and well-informed negotiations between the Parties' Counsel.  In reaching this agreement, counsel for both sides recognize it is more advantageous to settle this matter now and on the terms reached than to continue with the litigation.  Accordingly, the Parties respectfully request that the Court grant preliminary approval of the proposed settlement.

## BACKGROUND

Plaintiff Ogaian commenced this class and collective action against Defendant on February 21, 2012 (the "Action").  Ms. Ogaian worked as a Department Manager at Defendant's stores in New York and Connecticut.  She alleges that Defendant misclassified Department Managers ("DMs") as exempt from the overtime requirements of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and New York State's Labor Law, §§ 650, *et seq.* ("NYLL").  She further alleges that, because of this misclassification, Defendant improperly failed to pay her and other DMs premium pay for overtime they worked.  On behalf of these DMs, Ms. Ogaian seeks certification of an opt-in collective action under the FLSA and an opt-out class action under FED. R. CIV. P. 23 based on state wage and hour laws.  Six other former DMs have filed consents to join the action.  Defendant denies that its DMs are misclassified and that litigation classes may properly be certified.

Before initiating this case, Plaintiff's Counsel conducted an investigation into the merits of the potential claims and defenses likely to be raised by Defendant.

Prior to and after filing this action, Plaintiff's Counsel conducted interviews with DMs who worked in various Christmas Tree stores across the country to determine Defendant's company-wide policies, the hours they worked, the wages that they were paid, the nature of the duties and responsibilities, and other relevant information.  Plaintiff's Counsel also obtained and reviewed documents from their clients related to their employment with Christmas Tree.

On October 2, 2012, and based upon their previous experiences and knowledge of the law and with each other's counsel, *see* Lesser Decl. ¶ 4, the Parties began good faith settlement negotiations, first by attending a mediation session presided over by Hon. Kathleen A. Roberts of JAMS in New York City.  *See id.*  ¶¶ 5-7.

The initial mediation proved unsuccessful, and the Parties began litigating, with discovery requests, responses, productions and depositions.  Lesser Decl. ¶¶ 8-9.  On January 23, 2013, the Court entered a Protective Order governing the exchange of documents and information.  Dkt. No. 18.  Following the entry of the Protective Order, the Parties undertook discovery.  This formal discovery included significant written discovery by Interrogatories and Document Production, exchange and analysis of thousands of pages of documents, as well as the depositions of Ms. Ogaian, and one of the opt-ins, Mario Garrido.  *Id*. at ¶¶ 9, 10.  In addition to the above-described discovery, the Parties engaged in conferrals about difficult discovery issues pertaining to collective action certification, including the substantial negotiations over an ESI protocol, which resulted in the voluminous exchange of electronic information.  *Id*.

As a result of the commencement of the litigation and discovery and the further elaboration it provided to the Parties, settlement discussions were recommenced.  Lesser Decl. ¶ 11.  The Parties exchanged additional settlement information and had numerous telephonic settlement discussions with the aid of Judge Roberts.  *Id.* ¶¶ 12-13.  During these negotiations, the Parties reached a settlement in principle, agreeing on certain material terms and the settlement amount.  The Parties then negotiated and agreed to a proposed Settlement Agreement, Release, and Waiver ("Settlement Agreement", attached as Exhibit B).  By this motion, the Parties are seeking preliminary approval of the Settlement, which resolves the claims here.

## SUMMARY OF THE SETTLEMENT TERMS

### I.     The Settlement Classes

The Settlement's provisions are modeled on others that have been approved in this Court and in this Circuit, including one that was materially identical and entered into between counsel

for the two sides here in another case.  The Settlement Agreement defines two Settlement

Classes:

   (a)   The <u>Federal Class</u> shall include all individuals who have filed consents to join
         the Action (including without limitation all individuals who timely return a
         valid Claim Form containing a consent to join the Action) and who worked for
         [Christmas Tree] as Department Manager in any state in the United States
         within the three years prior to the date that the Court grants preliminary
         approval of the Settlement, and who, as Department Managers, were classified
         as exempt by [Christmas Tree].  The Federal Class Period shall run until the
         date of such preliminary approval.

   (b)   The <u>State Class</u> shall include all individuals employed as Department Managers
         for [Christmas Tree] during the time periods specified below, and who, as
         Department Managers, were classified as exempt by [Christmas Tree]. The
         State Class Periods shall run until the date of preliminary approval.

         (i)    In Alabama, Connecticut, Delaware, Georgia, Indiana, Massachusetts,
                Michigan, New Hampshire, New Jersey, North Carolina, Ohio,
                Pennsylvania, Rhode Island, South Carolina, Texas, Vermont, and
                Virginia, at any time from three (3) years prior to the filing of the
                Amended Complaint, through the date that the Court grants preliminary
                approval of the Settlement.

         (ii)   In Maryland at any time from three years and two weeks (158 weeks)
                years prior to the filing of the Amended Complaint, through the date that
                the Court grants preliminary approval of the Settlement.

         (iii)  In Florida and Kentucky, at any time from five (5) years prior to the filing
                of the Amended Complaint, through the date that the Court grants
                preliminary approval of the Settlement.

         (iv)   In Maine, at any time from six (6) years prior to the filing of the Amended
                Complaint, through the date that the Court grants preliminary approval of
                the Settlement.

         (v)    In New York, at any time from six (6) years prior to February 21, 2012,
                through the date that the Court grants preliminary approval of the
                Settlement.

   In order to most effectively resolve all the federal and state wage and hour claims, the

Settlement Agreement encompasses both the FLSA claims, in the form of a collective action

settlement (the "Federal Class"), and the state law claims in the form of a Rule 23 settlement (the

4

"State Class") (collectively, the "Settlement Classes").  The State Class settlement encompasses claims that are governed by various state statutes of limitations.[1]  Federal district courts in other, similar, wage and hour misclassification cases have approved this form of settlement.

The State Class for settlement purposes is broader than the New York State class asserted in the Complaint.  For purposes of settlement, Plaintiff is moving to amend the complaint to assert claims on behalf of this broader State Class.

## II.    The Settlement Fund

Defendant has agreed to create a Settlement Fund (the "Total Settlement Amount") in the amount of $1,340,000.00 to settle the claims of the Settlement Classes.  From this amount will be deducted court-approved attorneys' fees and expenses for Class Counsel, court-approved service payments for Ms. Ogaian and opt-in Mario Garrido (both of whom substantially assisted counsel), and costs of a Settlement Administrator.  Individual Settlement Amounts will be distributed from the Net Settlement Amount (as defined in paragraph 5(a) of the Settlement Agreement) to Class Members who return timely and valid claim forms and do not opt out of the Settlement.  All taxes and tax expenses normally withheld from an individual's paycheck will be deducted from amounts paid to Claimants as Individual Settlement Amounts as distributed by the Settlement Administrator.  Defendant will fund the Total Settlement Amount within fourteen days after the entry of a preliminary approval order.  *See* Exhibit B at ¶ 11.

If there are unclaimed funds from the Total Settlement Amount, after diligent search and skip trace procedures, 50% of the remaining unclaimed amounts will be donated to the National Employment Law Project, a well known and respected workers' rights organization, and the other 50% of the remaining unclaimed amounts shall revert to the Defendant.  *See id*.

---

[1] For purposes of this Settlement only, the Parties stipulate that the substantive elements of the claims do not differ materially from state to state.

## III.     Releases

Each participating Class Member will execute a FLSA release by returning a claim form. The Settlement Agreement also provides that every member of the State Class who does not timely opt out of the settlement will release his or her claims that were or could have been brought in this matter, arising out of the alleged facts, circumstances and occurrences underlying the claims set forth in the complaint, including claims arising under any state, federal, or local law.  *See* Exhibit B at ¶ 18.

## IV.     Class Certification

Solely for purposes of settlement, the Parties have agreed, subject to Court approval, for collective and class treatment of the Settlement Classes.  Defendants retain its right to object to certification of this action, or any other wage and hour class or collective action, or any other class action under FED. R. CIV. P. 23 or any other applicable rule, statute, law, or provision.

## V.     Allocation Formula

Under the Settlement Agreement, each Class Member who returns a timely and valid claim form and who does not opt out will receive an Individual Settlement Amount under an allocation formula that considers the approximate number of weeks each Class Member was employed by Defendant as a salaried Department Manager.  The payments to Class Members will vary proportionally, as each claimant will receive a pro rata share of the net settlement amount based upon the time each was employed as a Department Manager during the applicable period.  This method of calculating each Class Member's potential recovery will ensure a fair distribution of the settlement proceeds to the participating members of the Settlement Classes.

## VI.  Attorneys' Fees and Costs

Under the Settlement Agreement, Class Counsel intends to apply for an award of attorneys' fees and costs, to be paid from the $1,340,000 Settlement Fund.  Defendant will not oppose a fee and costs request that does not exceed 33% of the Total Settlement Amount.[2]

## VII.  Service Payments to the Plaintiff and Opt-in Garrido

Under the Settlement Agreement, in addition to his Individual Settlement Amount, Ms. Ogaian will receive a payment of $7,500.00 in recognition of her services as a putative class representative, an amount well in line with precedent recognizing the value of individuals' stepping forward to represent classes.[3]  Opt-in Garrido will receive a payment of $5,000.00 for his services to the case and the Settlement Classes.

---

[2] Although Plaintiff's Counsel's fee application is not presently before the Court, this is the almost universal fee award in wage and hour cases in this Circuit.  *See, e.g.*, *Capsolas v. Pasta Res. Inc.*, 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) (awarding 33.33% fee in $5.25 million settlement); *Spicer v. Pier Sixty LLC*, 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012) (awarding 33% fee in $8.5 million settlement); *Alli v. Boston Mkt. Corp.*, 10-cv-0004, Order (D. Conn. Apr. 12, 2012) (awarding 33.33% fee in $3 million settlement); *deMunecas v. Bold Food, LLC*, 2010 U.S. Dist. LEXIS 87644, at *19 (S.D.N.Y. Aug. 23, 2010) (awarding 33% fee in $729,000 settlement); *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008.) (awarding one-third fee in $450,000 settlement); *Clark v. Ecolab*, 2009 U.S. Dist. LEXIS 76613, at * 27 (S.D.N.Y. May 11, 2010) (awarding one-third fee in $6 million settlement); *Duchene v. Michael Cetta, Inc.*, 2009 U.S. Dist. LEXIS 85955, at *8 (S.D.N.Y. Sept. 10, 2009) (awarding 32.2% fee in $3.15 million settlement); *Faican v. Rapid Park Holding Corp.*, 2010 U.S. Dist. LEXIS 64382, at *6 (E.D.N.Y. June 29, 2010) (awarding 33.3% fee in $522,000 settlement); *McMahon v. Olivier Cheng Catering and Events*, 2009 U.S. Dist. LEXIS 18913, at *18 (S.D.N.Y. Mar. 2, 2010) (awarding 33% fee in $400,000 settlement); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 U.S. Dist. LEXIS 27899, at *16 (S.D.N.Y. Mar. 31, 2009) (awarding 33% fee in $3.265 million settlement); *Parker v. Jekyll & Hydye Entm't Holdings., L.L.C.*, 2010 U.S. Dist. LEXIS 12762, at *7 (S.D.N.Y. Feb 9, 2009) (awarding 33.3% fee in $745,000 settlement); *Prasker v. Asia Five Eight LLC*, 2010 U.S. Dist. LEXIS 1445, at *17 (S.D.N.Y. Jan. 4, 2010) (awarding 33% of $1.05 million settlement); *Reyes v. Buddha-Bar NYC*, 2009 U.S. Dist. LEXIS 45277, at *11 (S.D.N.Y. May 28, 2009) (awarding 33% fee in $710,000 settlement); *Stefaniak v. HSBC Bank USA*, 2008 U.S. Dist. LEXIS 53872, at *9 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million settlement); *Westerfield v. Wash. Mut. Bank*, 2009 U.S. Dist. LEXIS 94544, at *13 (E.D.N.Y. Oct. 2, 2009) (awarding 30% of $38 million settlement).

[3] Such service awards are routinely granted in wage and hour class actions.  *See, e.g.*, S*ewell v. Bovis Lend Lease LMB, Inc*., 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012) (granting service awards of $15,000 and $10,000 to class representatives in a wage and hour class action settlement); *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) (granting service awards of $10,000 to class representatives in a wage and hour settlement); *Reyes v. Altamarea Grp.*, 2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011) (granting service awards of $15,000 and $5,000, to class representatives in wage and hour settlement).

## VIII.   Settlement Claims Administrator

Under the Settlement Agreement, The Garden City Group, Inc. will serve as Settlement Claims Administrator.  All fees and expenses of Garden City Group will be paid from the Total Settlement Amount.

### CLASS ACTION SETTLEMENT PROCEDURE

Judicial proceedings under FED. R. CIV. P. 23 have established a defined procedure and specific criteria for settlement approval in class actions.  The Rule 23(e) settlement approval procedure describes three distinct steps:

(1)     Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of settlement classes;

(2)     Dissemination of mailed and/or published notice of settlement to all affected Class members; and

(3)     A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* FED. R. CIV. P. 23(e); *see also* HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS §§ 11.22, *et seq.* (4th ed. 2002) ("*Newberg*").  These procedures safeguard class members' procedural due process rights and enable the Court to fulfill its role as the guardian of class interests.

With this Joint Motion, the Parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the Settlement Agreement, provisionally certifying the Settlement Classes, approving Plaintiff's proposed notice of settlement (the "Settlement Notice"), and authorizing Plaintiff to send it.

The Parties respectfully submit the following proposed schedule for final resolution for the Court's consideration and approval:[4]

1.      Upon filing the Joint Motion for Preliminary Approval of Settlement, the Parties will direct the Settlement Administrator to mail notices required under 28 U.S.C. § 1715.

2.      The Parties will direct the Settlement Administrator to mail the Settlement Notice to Class Members within thirty (30) days after the Court grants this Motion for Preliminary Approval of Settlement.

3.      Class Members who wish to opt out of the Settlement must submit a request for exclusion to the Settlement Administrator, postmarked no later than twenty-one (21) days before the Final Approval Hearing.

4.      Class Members who wish to object to the Settlement must file their objections with the Court postmarked no later than twenty-one (21) days before the Final Approval Hearing.

5.      Plaintiff will move for Final Approval of Settlement within ten (10) days after the end of the Notice Period.

6.      The Parties request that the Court schedule a fairness hearing at least 100 days after filing of the Joint Motion for Preliminary Approval of Settlement.

7.      After the final fairness hearing, if the Court grants Plaintiff's Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment.  If no appeal is taken from the Court's Final Order and Judgment, the "Effective Date" of the Settlement will be thirty-five (35) days after the Court enters its Final Order and Judgment.  If an appeal is taken

---

[4] The Parties' proposal presupposes that the Court will preliminarily grant and finally approve the Parties' settlement.  The Parties acknowledge that if this Court or an appellate court denies approval of the settlement, then "the Parties will be returned to their respective positions *nunc pro tunc* as of May 30, 2013, the date on which they reached an agreement in principle to settle this litigation." (Ex. B, ¶ 4(c)).

from the Court's Final Order and Judgment, the "Effective Date" of Settlement shall occur upon final disposition of any appeal that has the effect of affirming the final approval order in its entirety.

8.      The Settlement Claims Administrator will disburse settlement checks to the Class Members.

## ARGUMENT

## I.      The Court Should Grant Preliminary Approval of the Proposed Settlement

### A.      The Legal Standards for Preliminary Approval

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks omitted); *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"). This is especially true in complex class action litigation. *Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Courts encourage settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus its resources elsewhere. *See Castagna v. Madison Square Garden*, L.P., 2011 U.S. Dist. LEXIS 64218 (S.D.N.Y. June 7, 2011) (commending plaintiffs' attorneys for negotiating an early settlement).

Unlike settlements in ordinary suits, the court must approve a settlement of a class action as "fair, reasonable, and adequate." *See* FED. R. CIV. P. 23(e); *see also Polar Int'l Brokerage Corp. v. Reeve,* 187 F.R.D. 108, 112-13 (S.D.N.Y. 1999). Review of a proposed class action settlement is generally a two-step process:  preliminary approval, in which the court reviews the proposed terms of the settlement and makes a preliminary determination on the fairness,

reasonableness and adequacy of the settlement terms, and a subsequent "fairness hearing." *In re IPO Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (*citing* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004)).

Ascertaining the fairness of a proposed settlement is left to the sound discretion of the trial court. *In re Ivan F. Boesky Sec. Litig.,* 948 F.2d 1358, 1368 (2d Cir. 1991); *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1079 (2d Cir. 1998). When exercising its discretion, the court reviews the proposed settlement in light of the strong judicial and public policies that favor settlements. *In re Sumitomo Copper Litig.,* 189 F.R.D. 274, 280 (S.D.N.Y. 1999). There is a strong initial presumption that a proposed settlement negotiated during litigation is fair and reasonable. *Chatelain v. Prudential-Bache Sec., Inc.,* 805 F. Supp. 209, 212 (S.D.N.Y. 1992). "Absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Trief v. Dun & Bradstreet Corp.,* 840 F. Supp. 277, 281 (S.D.N.Y. 1993); *see also In re Warner Commun. Sec. Litig.,* 798 F.2d 35, 37 (2d Cir. 1986) ("[I]t is not a district judge's job to dictate the terms of a class settlement.").

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and informal presentation by the settling parties. *Clark v. Ecolab Inc.*, 2009 U.S. Dist. LEXIS 108736, at *14 (S.D.N.Y. Nov. 17, 2009); *Newberg* § 11.25. To grant preliminary approval, the court need only find there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and

11

appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

In determining whether a settlement is fair, reasonable and adequate, courts in this Circuit look to the nine "*Grinnell* factors," which are:  (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000).  In approving FLSA settlements, courts have considered factors similar to those employed in the Rule 23 context, namely whether the settlement reached resulted from contested litigation and whether the result represents a fair and adequate resolution of those contested issues.  *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Mohney*, 2009 U.S. Dist. LEXIS 27899; *Stefaniak,* 2008 U.S. Dist. LEXIS 53872; *Clark*, 2010 U.S. Dist. LEXIS 47036; *McMahon*, 2010 U.S. Dist. LEXIS 18913.

The *Grinnell* factors applicable at this preliminary approval stage, which include the factors used to assess FLSA settlements, weigh in favor of the proposed settlement.[5]

---

[5] Factor 2 (the reaction of the class to the settlement) is applicable at the "fairness hearing" stage, not now.

**B.      The Proposed Settlement Is Fair, Reasonable, and Adequate Considering the Complexity, Expense, and Likely Duration of the Litigation, the Stage of the Proceedings, and the Amount of Discovery Completed**

### 1.      Complexity, Expense, and Likely Duration of the Litigation

The issues in this wage-and-hour case are complex and have been contested on a serious level, resulting in time and expense to the Parties and their counsel.  By reaching a favorable settlement before dispositive motions or trial, Plaintiff seeks to avoid any additional expense and delay, and instead ensure recovery for the Settlement Classes.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd,* 236 F.3d 78 (2d Cir. 2001).  Settling this dispute will enable the Parties to focus their resources and energies on other pursuits, rather than on prolonged, expensive and risk-laden litigation.  *See Stieberger v. Sullivan,* 792 F. Supp. 1376, 1377 (S.D.N.Y. 1992), *modified*, 801 F. Supp. 1079 (S.D.N.Y. 1992) (approving settlement, noting that "compromises represented therein constitute a reasonable balance, especially bearing in mind the length of time that would elapse, absent a settlement, before any concrete benefits could be delivered to any class member").

Although the Parties have already undertaken time and expense in litigating this matter, further litigation without settlement would cause additional and perhaps unnecessary expense and delay and such expense and delay would be disproportional to any likely recovery, much less the fair and reasonable result accomplished by the settlement here.  Barring a settlement, the Parties expect to engage in extensive motion practice -- there would likely be motions for class and/or collective action certification, motions for decertification, dispositive motions, and oppositions to such motions.  Additional discovery would have

been required to establish liability and damages, including depositions and more document
productions and reviews.  To establish the nature of the Department Manager position and
the applicability of exemptions to federal and state wage and hour laws, a complicated trial
would be necessary, featuring extensive testimony by Defendant's managers and executives
(many of whom are located out of state), Ms. Ogaian, Mr. Garrido, and numerous FLSA collective
and class members, not to mention extensive expert testimony.  Preparing and presenting
testimonial and documentary evidence regarding the complex factual and legal issues at such a
trial would have consumed tremendous amounts of time and resources for both sides, and
required substantial judicial resources to adjudicate the Parties' disputes.  A trial of the liability
and damages issues would have been costly and would have further delayed resolution.  Any
judgment could be appealed, thereby extending the duration of the litigation.  If Plaintiff
prevailed at trial and on appeal, it could nevertheless have taken years for Class Members to
recover a monetary judgment.  This Settlement, on the other hand, makes monetary relief
available to Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor
weighs in favor of preliminary approval.

   Moreover, expansion of the definition of the State Class to include Department Managers
from all states where Christmas Tree has stores will result in a global settlement that will fully
and finally resolve all possible state law claims for all members of the State Class who do not opt
out.  The broad State Class, combined with the nationwide Federal Class, will bring the greatest
possible finality to this litigation.  The Parties agree that this expanded class definition is
essential to resolving this matter.  Other courts have approved similarly structured settlements
comprising a nationwide FLSA class and a single, multi-state Rule 23 Class.  *See, e.g., Jenkins v.
TSA Stores, Inc.,* No. 09-cv-02224 (JFB) (ETB) (E.D.N.Y.) (final approval of an identically

structured settlement granted on September 30, 2011); *Caissie v. BJ's Wholesale Club, Inc.*, No. 08-cv-30220 (MAP) (D. Mass) (final approval of an effectively identically structured settlement granted on June 24, 2010).

### 2.      Stage of Proceedings and Amount of Discovery Completed

Although preparing this case through trial would require many hundreds or thousands of hours of discovery and pretrial work for both sides (a point which Plaintiff's Counsel can state with certainty having been one of the few counsel to have litigated a FLSA collective action through to a jury trial), the Parties have exchanged significant information and counsel is able to recommend settlement. Lesser Decl. ¶¶ 4, 13, 15, 16. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin,* 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian,* 80 F. Supp. 2d at 176 (internal quotation marks omitted). Here, the information produced and discovery exchanged was sufficiently adversarial and part of "an aggressive effort" to learn the relevant facts and circumstances in an efficient and cost-effective manner, and exceeds the required standard.

### C.      The Proposed Settlement Is Fair, Reasonable, and Adequate Given the Risks of Establishing Liability and Damages, and Maintaining the Class Through Trial

To continue this matter through the end of a trial would expose both sides to significant risks. Although Plaintiff believes her case is strong, as evidenced by the substantial settlement amount, it is subject to considerable risk as to both liability and damages. In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian,* 80 F. Supp. 2d at 177 (quotation marks omitted). A trial on the merits would involve significant risks to Plaintiff

because of the fact-intensive nature of proving liability under the FLSA and state wage and hour laws, and in light of the substantial defenses available to Defendant.  Despite Plaintiff's belief that her claims are meritorious, Plaintiff's Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain.  The proposed settlement alleviates this uncertainty.  This factor weighs heavily in favor of preliminary approval.

Even if liability could be established, significant uncertainties exist as to both the fact and amount of damages.  The issue of damages would be hotly disputed and would be the subject of "dispute between [the] experts [retained by the parties], a dispute whose outcome is impossible for [the Court] to predict."  *In re RJR Nabisco Sec. Litig.,* 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992); *see also In re Warner Commun. Sec. Litig.,* 618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) ("Undoubtedly, expert testimony would be needed to fix not only the amount, but the existence, of actual damages. . . .  In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited . . . .") (citations omitted).

Uncertainty concerning liability and damages could result in little or no recovery for Class Members after trial.  But even the possibility that the class "might have received more if the case had been fully litigated is no reason not to approve the settlement."  *Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203, 1206 (6th Cir. 1992) (*quoting Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989)).  The proposed settlement "provides for relief now, not some wholly speculative payment of a hypothetically larger amount years down the road."  *Strougo v. Bassini,* 258 F. Supp. 2d 254, 260 (S.D.N.Y. 2003).  Under these circumstances, it is proper for the

parties "to take the bird in the hand instead of the prospective flock in the bush." *Oppenlander v. Standard Oil Co.,* 64 F.R.D. 597, 624 (D. Colo. 1974).

### D.   Establishing a Class and Maintaining it Through Trial Would Not Be Simple

The risk of maintaining the class status through trial is also present.  The Court has not certified the class yet — whether as a collective action under the FLSA or as a class action with respect to state law claims — and the Parties anticipate that such a determination would be reached only after intense, exhaustive briefing and argument by both Parties.

Should the Court certify or conditionally certify one or more litigation classes, Defendant would in all likelihood move for decertification later in the proceedings, necessitating another round of extensive briefing.  Defendant could also seek permission to file an interlocutory appeal under FED. R. CIV. P. 23(f).  Risk, expense, and delay permeate such a process.  Settlement eliminates this risk, expense, and delay.  This factor favors preliminary approval.

### E.   The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation,  the "Ability of Defendants to Withstand a Greater Judgment" and the "Reasonableness of the Proposed Settlement" Factors Support Approval of the Proposed Settlement

Plaintiff's Counsel has determined that this case presents risks that militate toward substantial compromise.  Defendant has agreed to settle this case for a substantial amount, $1,340,000.  The resulting average settlement amount available to each Class Member who submits a timely and valid claim could exceed $1,500, net of attorneys' fees and other items.

"The determination of a 'reasonable' settlement is not susceptible to a mathematical equation yielding a particularized sum." *Strougo*, 258 F. Supp. 2d at 260.  Rather, "'there is a range of reasonableness with respect to a settlement….'" *Id.* (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)).  Thus, "[i]n evaluating the proposed settlement, the court is not to compare its terms with a hypothetical or speculative measure of a recovery that might be

achieved by prosecution of the litigation to a successful conclusion." *Republic Nat'l Life Ins. Co. v. Beasley,* 73 F.R.D. 658, 668 (S.D.N.Y. 1970).  Instead, "[d]ollar amounts are judged … in light of the strengths and weaknesses of plaintiffs' case."  *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,* 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989); *see also Grinnell*, 495 F.2d at 468 (*citing Saylor v. Lindsley,* 456 F.2d 896, 904 (2d Cir. 1972) ("The evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice.")).

It is appropriate to deduct from the total settlement amount (i) service payments; (ii) 33% of the total settlement amount for attorneys' fees and costs; and (iii) costs of administration of the Settlement.  Courts routinely approve service payments to class representatives to compensate them for services provided during the litigation.  *See* note 4, above.  Courts likewise routinely find attorneys' fee awards of 33% of the settlement fund reasonable.  *See* note 3, above.

## II.    The Classes Should Be Certified For Settlement Purposes

As noted, the proposed State Class consists of all individuals who were employed by Defendant in the United States as a Department Manager during the applicable limitations periods.  The proposed Federal Class consists of those individuals identified above who submit consents to join the settlement through the claims process as described above.  Plaintiff submits that the State and Federal Classes meet all of the requirements for class and collective action treatment under Rule 23(a), 23(b)(3), and the FLSA.[6]

It is well recognized that the requirements for conditional certification of a collective action under Section 16(b) of the FLSA (29 U.S.C. § 216(b)) are more lenient than those under

---

[6] Although Defendant supports settlement of this matter as both a class and collective action, it takes no position on whether each of the requirements for class certification have been met, and expressly reserves the right to oppose certification of any litigation class in this or any other matter, on any grounds, in the event that the Settlement is not finalized.  The argument set forth in this Section, concerning the propriety of class and collective action certification, is submitted by Plaintiff only, and is not joined by Defendant.

Rule 23.  *E.g.*, *Cruz v. Lyn-Rog Inc.*, 754 F. Supp. 2d 521, 524 (E.D.N.Y. 2010) ("Courts have repeatedly stated that Section 216(b)'s 'similarly situated' requirement is 'considerably less stringent' than the requirements for class certification under Rule 23.")  (*quoting Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001)); *Cabrera v. 211 Garage Corp.,* 2008 U.S. Dist. LEXIS 67050 (S.D.N.Y. Aug. 22, 2008) ("The requirements for Rule 23 class certification are far more stringent than those for conditional collective action certification under § 216(b).").

As discussed below, all of the Rule 23 certification requirements for settlement purposes are met for the proposed State Class, and consequently, the conditional certification requirements under the FLSA are met for the Federal Class.  (Ex. B, ¶ 2(b)); *see Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *Cnty. of Suffolk v. Long Island Lighting Co.,* 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd,* 907 F.2d 1295 (2d Cir. 1990).  Preliminary settlement class certification and appointment of Class Counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all Class Members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing.  *See In re Gen. Motors Corp. Pick-up Truck Fuel Tank Litig.*, 55 F.3d 784 (3d Cir. 1995).

### A.  The Rule 23(a) Factors Are Met

### 1.  Numerosity

One of the prerequisites to a class action is that the class must be "so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  The word "impracticable" is

key.  As the Second Circuit has explained, the numerosity requirement "does not mandate that joinder of all parties be impossible — only that the difficulty or inconvenience of joining all members of the class ma[kes] use of the class action appropriate."  *Central States Southeast v. Merck-Medco,* 504 F.3d 229, 244-45 (2d Cir. 2007); *see also Goldstein v. North Jersey Trust Co.,* 39 F.R.D. 363, 367 (S.D.N.Y. 1966) (explaining that "impracticable" does not mean "incapable of being performed" or "infeasible").

Here, the proposed Class consists of approximately 525 individuals who were employed by Defendant in the United States in the capacity of DMs during the applicable limitations periods.  For purposes of settlement, the impracticability of joining all of these individuals in a single suit is not disputed.  *Cf. Robidoux v. Celani,* 987 F.2d 931, 936 (2d Cir. 1993) (noting that relevant considerations for "impracticability" include "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, [and] the ability of claimants to institute individual suits….") (*citing* HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 3.06, at 143 (2d ed. 1985). Rule 23 (a)'s numerosity requirement is satisfied.

### 2.    Commonality and Typicality

Rule 23(a)'s commonality requirement is met if plaintiff's grievances share a common question of law or of fact, *see In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145, 166-67 (2d Cir. 1987), while typicality is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Guiliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotations omitted). In practice, Rule 23(a)'s commonality and typicality criteria "tend to merge' because '[b]oth serve as guideposts for determining whether … the named plaintiff's claim and the class claims

are so inter-related that the interests of the class members will be fairly and adequately protected in their absence." *Caridad v. Metro-N. Commuter R.R.,* 191 F. 3d 283, 291 (2d Cir. 1999).

At issue in this case is the nature of the DM position at Christmas Tree and whether it qualifies for an exemption under federal and state wage laws. Plaintiff's and Class Members' claims share common questions of law and fact, arise from the same course of events, and rely on similar legal arguments to support liability. The claims of the Plaintiff, herself a DM during the class period, and those of the Class Members are so interrelated that the interests of the absent Class Members are fairly protected.

### 3.    Adequacy

An examination of adequacy under Rule 23(a) has two aspects: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and she must have no interests antagonistic to the interests of the other class members. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir. 2000); *Toure v. Cent. Parking Sys*., 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007). A conflict or potential conflict "must be fundamental" and go to the very subject matter of the litigation to defeat certification. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 36 (2d Cir. 2009) (*quoting In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 145 (2d Cir. 2001)).

Given the interrelatedness of the Class Representative's and Class Members' claims, the Class Representative has every incentive to pursue the Class Members' claims vigorously. Nor does any conflict exist between the interests of the Class Representative and those of the Class Members, much less a "fundamental" conflict that would defeat class certification. While the claims of the proposed Class Representative may not be identical to every claim of every

putative Class Member, the proposed Class Representative can adequately represent the putative Class. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005). .

Plaintiff's counsel also meets the adequacy requirement of Rule 23(a)(4). Both Klafter Olsen & Lesser LLP and Hepworth Gershbaum & Roth PLLC have exceedingly substantial experience prosecuting and settling wage and hour class actions, particularly retail chain store managerial misclassification claims, a form of claim that they have litigated, tried and settled in numerous cases. *See* Lesser Decl. ¶ 16.

### B.     The Rule 23(b)(3) Factors Are Met

Rule 23(b)(3) permits class certification "if the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." This Rule "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." FED. R. CIV. P. 23(b)(3) advisory committee's note to 1966 amend.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem v. Windsor Prods.*, 521 U.S. 591, 623 (1997). Plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole … predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) (internal quotation omitted). Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. FED. R. CIV. P. 23(b)(3).[7]

Plaintiff submits that the requirements of Rule 23(b)(3) are met because a settlement class that will determine the issues common to all Class Members and fix compensation for alleged injury is far superior to numerous trials that risk disparate results for similarly situated individuals. Litigation on a case-by-case basis would be extremely costly for Plaintiff and the Class Members, and piecemeal litigation would tax the resources of the judiciary. Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of the present controversy. No other member of the Settlement Classes has brought individual, class, or collective actions related to the matters contested here. Finally, Defendant's agreement to pay the valid and timely claims of Class Members on a pro rata basis from the Net Settlement Amount eliminates any possible predominance of individual issues.

For all the reasons stated above, the Settlement Classes meet the requirements of Rule 23(a)(1) and (b)(3) and certification for settlement purposes should be granted.

---

[7] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank,* 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.").

**III.     The Proposed Notice to the Class Members Is Adequate and Satisfies Due Process**

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement."  The Second Circuit has interpreted this provision as requiring adequacy of a settlement notice in a class action to be "measured by reasonableness":

> There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'  Notice is 'adequate if it may be understood by the average class member.'"

*Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 438 (2d Cir. 2007) (*quoting Wal-Mart Stores,* 396 F.3d at 113-14)); *see also Achtman v. Kirby, McInerney Squire,* 464 F.3d 328, 338 (2d Cir. 2006) (notice of pendency need only contain "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class") (*quoting In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).

The Parties' proposed form of notifying members of the Settlement Classes of the proposed settlement provides information on the meaning and nature of the proposed Settlement Classes; the terms of the proposed settlement; the amount of the settlement; the fact that Class Counsel will receive attorneys' fees and the Class Representative and Opt-in Garrido will receive service payments; and the procedures and deadlines for objecting to, commenting on, or being excluded from, the settlement.

The Settlement Notice (with attached Consent to Join and Claim Forms) will be sent via first class mail to all Class Members with follow-up procedures for handling returned mail and for a supplemental mailing to Class Members who do not submit a claim form or exclusion request.  *See Wolfert v. Transamerica Home First*, 439 F.3d 165, 176 (2d Cir. 2006) (approving use of first-class mail as means of providing notice to class).  Thus, both the contents of the

Settlement Notice and the methods of communicating it are more than adequate to satisfy due process.

## IV.    Plaintiff's Counsel Should Be Appointed Class Counsel

The lawyers representing the Plaintiff, Klafter Olsen & Lesser LLP, and Hepworth Gershbaum & Roth PLLC, should be appointed as Class Counsel.  Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.  FED. R. CIV. P. 23(g)(1)(C)(i).

The court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.  FED. R. CIV. P. 23(g)(1)(C)(ii).  The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case."  FED. R. CIV. P. 23(g) advisory committee's note.

Proposed Class Counsel meet all of these criteria.  These firms did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the Class Members' claims.  Proposed Class Counsel have, as noted, substantial experience prosecuting and settling employment class actions, including retail chain store misclassification wage and hour actions, and the lawyers assigned to this matter by proposed Class Counsel are well-versed in wage and hour law and in class action law, and are well qualified to represent the interests of the Class.  *See* Lesser Decl. ¶ 16.

## CONCLUSION

For all of the foregoing reasons, the Parties jointly ask that the Court (1) preliminarily approve the proposed settlement; (2) conditionally certify the collective and class actions for purposes of settlement; (3) approve the proposed form of notice and the manner of disseminating the notice; (4) appoint Class Counsel, Class Representatives and Claims Administrator; (5) set a date by which members of the Settlement Classes must submit comments on, objections to, claims for proceeds under, or requests to be excluded from, the proposed settlement; and (6) schedule the final settlement approval hearing.

Date:   January 6, 2014

For the Plaintiff and Settlement Classes

s/ Seth R. Lesser

_____

Seth R. Lesser
Fran Rudich
Michael J. Palitz
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone:     (914) 934-9200
Facsimile:      (914) 934-9220

        -and-

Marc S. Hepworth
David A. Roth
Charles Gershbaum
HEPWORTH GERSHBAUM & ROTH PLLC
192 Lexington Avenue, Suite 802
New York, New York 10016
Telephone:     (212) 545-1199
Facsimile:      (212) 532-3801

For the Defendant

s/ Jonathan L. Sulds

_____

Jonathan L. Sulds
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
Telephone:     (212) 801-6882
Facsimile:      (212) 801-6400