UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
ELLEN OGAIAN, Individually and on          :
Behalf of All Other Persons Similarly Situated,    :
                                           :          12-cv-01273-PAC
                    Plaintiffs,            :
                                           :
            -against-                      :
                                           :
CHRISTMAS TREE SHOPS, INC.                 :
                                           :
                    Defendant.             :
--------------------------------------------------------------X

**DECLARATION OF SETH R. LESSER IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT**

SETH R. LESSER, an attorney admitted to the bar of this Court, declares, under

penalty of perjury that:

1.      I am a partner in Klafter Olsen & Lesser LLP, counsel for named Plaintiff

Ellen Ogaian ("Plaintiff"), in this action.  I am fully familiar with the facts and

circumstances set forth herein, and I make this Declaration in support of the parties' Joint

Motion for Preliminary Approval of Settlement of Collective and Class Action, as well as

for the sending of notice and the scheduling of a final approval hearing.

2.      On February 21, 2012, Plaintiff, a former department manager at a

Christmas Tree store filed her class and collective action complaint ("Complaint") in this

Court.  Plaintiff asserted that Christmas Tree misclassified her and other department

managers as exempt employees and, as a result, she and they were denied overtime pay

under the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* ("FLSA") and the

New York Labor Law §§ 650, *et seq.*

1

3.      Ms. Ogaian brought her claims on behalf of an opt-in class under the

FLSA of all "Department managers and other comparable positions" employed by

Christmas Tree between February 21, 2009, and the entry of any judgment in the

litigation.  She also brought her claims on behalf of a similar opt-out class under Rule 23

of the Federal Rules of Civil Procedure of all such individuals employed by Christmas

Tree in New York under the New York Labor Law from February 21, 2006, to the entry

of judgment.

4.      From the outset of the litigation, the parties began holding discussions

with each other to consider a possible expeditious resolution that would obviate the need

for significant expenditures on litigation activity.  That such a resolution could be

considered so quickly by the sides was due to the fact that, previously, the parties'

attorneys, had handled other, similar FLSA/New York Labor Law cases together,

including a $2.75 million settlement, in *Cumberbatch v. United Parcel Service, Inc.*, No.

CV-06-1035 (S.D.N.Y.) and a $990,000 settlement in *Jenkins v. TSA Stores, Inc., d/b/a/*

*Sports Authority*, No. 09-2224 (E.D.N.Y.).  Accordingly, there was, it is fair to say, a

good deal of mutual respect and professional amity between the attorneys.  And, no less

importantly, there is a substantial degree of experience in litigating these cases on both

sides (*see* ¶ 16 below).

5.      Settlement discussions between the two sides started in the fall of 2012,

and the parties decided to turn to the services of a professional mediator.  After some

discussion, the parties agreed to use a former United States Magistrate Judge, Hon.

Kathleen A. Roberts, who had been instrumental in settling the above-mentioned *Sports*

*Authority* case.  Judge Roberts is with JAMS and has extensive experience in mediating nationwide wage and hour cases with allegations under both state and federal law.

6.      In preparation for that mediation, we requested and received from Christmas Tree information concerning the size and scope of the potential collective and Rule 23 classes, and rates of pay.  With that information, in hand, along with information from our clients and our investigation, we can fairly state that we well and intelligently informed about the case for the mediation.

7.      In connection with the mediation, the parties evaluated the case and Plaintiff provided to both defense counsel and to Judge Roberts her analysis of (1) the potential liability if the case were to proceed; and (2) the relative strengths and weaknesses of the legal merits of the parties' respective positions.  Defendant also provided Judge Roberts with its views and positions on the strength of the case, as well as possible exposure and litigation outcomes.

8.      This in-person mediation session proved inconclusive and did not resolve all the disputed issues between parties.

9.      Plaintiff's counsel determined that the parties should begin litigation. Accordingly, Defendant filed its answer, and the parties began formal discovery.  As discovery commenced, Plaintiffs obtained yet more information about the facts underlying the claims and liability issues in the form of Defendant's responses to Plaintiffs' Requests for Documents, and Plaintiffs' Interrogatories.  In addition to the documentary discovery, Plaintiffs sought and took a Rule 30(b)(6) deposition. This discovery tended to confirm, in Plaintiffs' counsel's minds, the nature of the claims and defenses in the case.

10.     Christmas Tree, in turn, propounded discovery upon Ms. Ogaian, to which she responded.  Defendant then took the depositions of Ms. Ogaian and one of the opt-ins, Mario Garrido.

11.     At the same time that the parties were engaged in discovery continued, they recommenced settlement discussions.  During these discussions, they exchanged additional settlement information and had numerous telephonic settlement discussions, with the aid of Judge Roberts.

12.     These settlement negotiations included further open and frank debates between the parties (and through the mediator) regarding their differing legal positions, under the law applied as to Christmas Tree's classification of department managers.  The parties continued to address and discuss the size and scope of the claims, the likelihood of success on the merits, the manner in which damages could be calculated and obtained, the likelihood of trial and what would occur at such trial.

13.     With Judge Roberts overseeing these discussions and negotiations, the parties finally reached an agreement in principle.  There can be little doubt that the settlement was the product of arms' length negotiations by informed counsel for both sides.

14.     Following the agreement in principle, the parties negotiated the terms of the Settlement Agreement now being put forward before the Court.  This process included discussions of the allocation formula for the expected amounts to be paid to participating class members, the timing of such payments, the selection of a settlement administrator, service awards to the Plaintiff and opt-in Garrido (the only opt-in who sat

for deposition), tax consideration for the settlement payments, scope of the waiver and releases, and the manner for handling unclaimed settlement funds.

15.     As Plaintiffs' counsel, we are of the opinion that the proposed Settlement is fair, reasonable, and adequate.  Further, we believe that the Settlement Agreement is in the best interest of the class in light of all known facts and circumstances, including the significant risks and delays of litigation that are presented by the defenses and potential pre-trial and appellate issues Christmas Tree may assert.  A resolution of this litigation at this stage – rather than following upon a year or more of additional discovery, collective and class action briefing, post-certification further discovery, pretrial proceedings and potential trial and the costs attendant upon and likely to be incurred through such activities – most certainly greatly inures to the benefit of the Settlement Classes.

16.     Given our experience, the proposed Settlement being presented to the Court is, accordingly, a result well to the benefit of the Settlement Class members.  In this respect, we can fairly state that our experience is substantial, particularly in the specific area of retail chain store misclassification cases.  With respect to the standing of my firm, attached hereto as Exhibits A and B, respectively, are a brief biography of my firm and copy of my own CV. In this connection, I would note that, as is here specifically relevant, Klafter Olsen & Lesser LLP ("KOL") has, in recent years, successfully litigated to conclusion over two dozen FLSA/state wage and hour cases and settlements that, to date, constitute over $100 million in value. These include, not only the two misclassification cases cited above (see ¶ 4), but also *Stillman v. Staples, Inc.*, 07-cv- 849 (D.N.J.), a FLSA wage and hour case that KOL ultimately (and successfully) tried to a jury verdict on behalf of 342 opt-ins and which case is one of the rare FLSA

misclassification cases that has, at least in recent years, been successfully tried to a jury

verdict for plaintiffs. That trial, which, even pursuant to an expedited schedule, occurred

nearly two years after the filing of the case, consumed six weeks of time, cost hundreds

of thousands of dollars and presented innumerable contested issues of both law and fact.

Although a jury verdict was obtained, the post-trial motion practice that thereupon

followed was quite extensive and included, among other things, motions for judgment

notwithstanding the verdict to have the damages reduced pursuant to the "fluctuating

work week" basis of calculating overtime, and for decertification of the collective class.

Ultimately, the Staples case resulted in an omnibus settlement totaling $42 million, *In re*

*Staples Wage & Hour Litigation*, MDL No. 2025 (D.N.J.) (final approval obtained

November 3, 2011; KOL was the agreed-upon lead counsel in the same). In addition, and

for illustrative purposes, included in the cases in which KOL has acted as the lead

counsel are the largest FLSA/state wage and hour settlements – all retail chain store

manager misclassification cases – in the District of New Jersey (the *Staples* litigation),

the District of Rhode Island (*Nash v. CVS*, 09-cv-079 (D.R.I.) ($34 million settlement)),

the Middle District of Pennsylvania (*Craig v. Rite Aid Corp.*, 08-cv-2317 (M.D. Pa.)

($20.9 million settlement)), and the District of Massachusetts (*Caissie v. BJ's Wholesale*

*Club*, 08-cv-30220 (D. Mass.) ($9.3 million settlement)). In addition to the *Stillman v.*

*Staples* trial, KOL also tried another FLSA collective action to a successful verdict, the

details of which, by virtue of having been tried in an arbitration forum, are protected from

disclosure as confidential. However, it is rare for a law firm to have tried one, much less

certainly two, FLSA collective actions to successful verdict.  In addition, co-counsel,

Hepworth, Gershbaum & Roth, PLLC, is also well experienced in this area of the law,

6

and was, among other cases, co-counsel in the *Craig v. Rite-Aid* case cited above, and also in *Youngblood, et. al. v. Family Dollar Stores, Inc.*, No. 09-cv-3176 (RMB/FM) and *Rancharan v. Family Dollar Stores, Inc.*, No. 10-cv-07580 (RMB/FM), where, last year we obtained a $14 million settlement on behalf of a class and collective action of retail chain store managers, which Judge Berman approved on June 7, 2013. A copy of the Hepworth, Gershbaum & Roth, PLLC resume is attached as Exhibit C hereto.

17.     In addition, we have fully advised the Plaintiff of the Settlement Agreement, who approves of and consents to the settlement. She has signed the settlement agreement.

18.     Attached as Exhibit D is the parties' Settlement Agreement.

19.     Attached as Exhibit E is the parties' Proposed Notice.

20.     Attached as Exhibit F is the parties' Proposed Consent to Join and Claim Form.

21.     Attached as Exhibit G is the Amended Complaint.

22.     I declare under penalty of perjury under the laws of the United States that the foregoing is true and corrected. Executed on this 3rd day of January 2014, in Rye Brook, New York.

_____
Seth R. Lesser

7