# EXHIBIT D

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

ELLEN OGAIAN, individually and on
behalf of all others similarly situated,

                                                     12-cv-01273-PAC

                     Plaintiffs,

            -against-

BED BATH & BEYOND, INC., and
CHRISTMAS TREE SHOPS INC.,

                    Defendants.

-----------------------------------------------------------------

### SETTLEMENT AGREEMENT, RELEASE, and WAIVER

      This Settlement Agreement, Release and Waiver ("Agreement") is made this 13th day of September, 2013, by and between Plaintiff Ellen Ogaian ("Ogaian" or "Plaintiff"), Opt-In Mario Garrido, ("Garrido" or "Opt-In") on behalf of themselves, the class and subclasses they purport to represent, their agents, representatives, assignees, heirs, executors, beneficiaries and trustees (collectively, "Plaintiffs") and Christmas Tree Shops, Inc., (referred to herein as "CTS"), on behalf of itself, its parents, (including without limitation, Bed Bath and Beyond Inc.,) divisions, subsidiaries, predecessors and successors, and their directors, officers, members, fiduciaries, insurers, employees, attorneys and agents (each in their individual and corporate capacities) (collectively the "Released Parties") (CTS, Plaintiffs and the Opt-In, are collectively referred to herein as the "Parties").

      WHEREAS, Ogaian commenced litigation in the U.S. District Court for the Southern District of New York (the "Court") captioned *Ellen Ogaian, individually and on behalf of others similarly situated  v. Bed, Bath & Beyond, Inc. and Christmas Tree Shops, Inc.;* Civil Action No. 12-1273 (the "Action"), in which she asserted claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and the New York Labor Law §§ 650, *et seq.*, arising out of CTS's alleged failure to appropriately compensate certain department managers (the "Department Managers") for all hours worked per workweek ("FLSA claims"); and

      WHEREAS, Ogaian and her counsel, Hepworth Gershbaum & Roth, PLLC and Klafter Olsen & Lesser LLP ("Class Counsel"), brought the claims asserted in the Action as a collective action pursuant to 29 U.S.C. § 216(b) and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiffs and other current and former employees who worked for CTS as a Department Manager; and

      WHEREAS, as of this date, Garrido has filed a consent to join the Action as party plaintiff asserting FLSA claims against CTS; and

WHEREAS, CTS denies that it has committed any wrongdoing or violated any state or federal law pertaining to payment of wages or hours of work and has vigorously defended the claims asserted in the Action; and

WHEREAS, the Parties engaged in extensive discovery, participated in a full-day mediation session before the Honorable Kathleen A. Roberts of JAMS in New York City, NY on October 2, 2012, and engaged in numerous telephonic settlement discussions with the aid of Judge Roberts; and.

WHEREAS, in order to avoid the expense and burden of further litigation, the Parties desire to resolve (i) any and all claims that were or could have been asserted under the wage and hour provisions of the FLSA on behalf of all past or present CTS employees who held the position of Department Manager at any time during the class period who submit written consents to join the Action prior to the Final Approval of the Parties' settlement; and (ii) any and all claims that were or could have been asserted based on the allegations against CTS under state laws relating to the payment of wages, including without limitation claims for the payment of overtime, on behalf of any and all individuals who held the position of Department Manager, and who were classified as exempt by CTS, in the states of Alabama, Connecticut, Delaware, Florida, Georgia, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, and Virginia during the applicable statute of limitations period in each state; and

WHEREAS, CTS represents that the Settlement Classes as defined in Section 4 include approximately 500 individuals, in the aggregate;

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises hereinafter set forth, the Parties agree as follows:

1.   **No Admission of Liability or Concession as to the Merits.**

CTS expressly denies any wrongdoing or any violation of state or federal law as alleged in the Action.  Nothing contained in this Agreement shall be construed as an admission of any liability or concession as to the merits of any claim by any Party, and all Parties agree not to offer this Agreement as evidence or otherwise use it in any judicial or administrative proceeding, except that this Agreement may be introduced in any proceeding for the sole purpose of enforcing its terms.

2.   **Approval of Settlement.**

(a)   All terms of this Agreement are contingent upon the approval of the Parties' settlement and certification by the Court of the Settlement Classes (as defined in Section 4 below) for settlement purposes only.

i.   For purposes of this Agreement, "Preliminary Approval" shall be deemed to occur upon the issuance of a Court order conditionally certifying the Settlement Classes specified in Section 4 for purposes of providing notice to the affected individuals as described in Section 10(a) (the "Preliminary

Approval Order"). The Preliminary Approval Order shall also, among other things, require any requests for exclusion from the State Class or objections to the Settlement to be postmarked or received no later than twenty-one (21) days prior to the final approval hearing.

ii. If the Court grants an order ("Final Approval Order") fully, finally, and unconditionally (1) granting the Parties' motion for approval of their settlement, (2) extinguishing claims against the Released Parties as specified in Section 18; and (3) dismissing the Action with prejudice, then the "Effective Date" shall be deemed to occur (A) thirty-five (35) days after the issuance of such order, if no appeal of said order is filed within that 35-day period, or (B) upon the final disposition of any appeal that has the effect of affirming the order in its entirety.

iii. The Parties agree to cooperate and take all steps necessary and appropriate to obtain a Preliminary Approval Order and Final Approval Order, and otherwise effectuate all aspects of this Agreement.

(b)   The form of class certification order shall expressly state that the Parties agree that certification of the Settlement Classes is a conditional certification for settlement purposes only, and that CTS retains its right to object to certification of this Action, or any other wage and hour class or collective action, or any other class action under Fed. R. Civ. P. 23 or any other applicable rule, statute, law, or provision. A proposed class certification order for settlement purposes only, subject to Court approval, is attached as Tab A.

(c)   CTS stipulates for settlement purposes only to the certification of the Settlement Classes but does not waive, and instead expressly reserves, its right to challenge the propriety of conditional or class certification for any purpose as if this Agreement had not been entered into by the Parties in the event that the Court does not approve the settlement or the Effective Date does not occur. The Parties agree that, if approved, certification of the Settlement Classes is in no way an admission by CTS that class or collective certification is proper in this Action, any other wage and hour litigation, or any other litigation against CTS. The Parties further agree that, other than to effectuate the Settlement of this Action in this jurisdiction, the certification of the Settlement Classes for settlement purposes and all documents related thereto, including this Agreement and all accompanying exhibits and all orders entered by the Court in connection with this Agreement, shall not be admissible in any judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding, including without limitation any wage and hour litigation, or any other litigation, against any of the Released Parties.

(d)   The Parties and their counsel agree that they will, within seven days of their execution of this Agreement, execute a copy of the Joint Motion for Preliminary Approval of Class and Collective Action Settlement and Incorporated Memorandum of Law, underlined attached as Tab B (the "Joint Motion"), seeking

3

Preliminary Approval of their proposed settlement.  Plaintiffs agree that they will file the Joint Motion with the Court within seven (7) days of its execution.

(e)    The Parties agree that if the Court does not approve any material term in the Parties' Joint Motion or requires as a condition to granting the Joint Motion any term that effects a material change in this Agreement, then this Agreement may be voided at either Party's option.  The Parties further agree that CTS being required to pay any amount greater than the amount specified in Section 5 shall be deemed a material change.  The Parties further agree that any ruling that the Court may make regarding Class Counsel's motion or petition for an award of attorneys' fees and costs pursuant to Section 6 or Class Counsel's motion or petition for any Service Payments pursuant to Section 7 shall not constitute a material change in this Agreement, unless such award has the effect of increasing the total amount CTS must pay in complete settlement of all claims addressed by this Agreement.

(f)    In conjunction with the filing of the Joint Motion, the Parties will jointly request that the Court hold a fairness hearing regarding the Parties' request for approval of their proposed settlement not less than one hundred (100) days after the filing of the Joint Motion.  Counsel for the Parties will communicate with the Clerk of the Court and make any further filings necessary to secure the approval of their request.

3.    **Amendment to Complaint.**

(a)    Concurrent with the filing of the Parties' Joint Motion, Class Counsel shall file pursuant to Fed. R. Civ. P. 15(a)(2) and with CTS's written consent an Amended Complaint in the Action in the form attached as Tab C to this Agreement.[1]  The Parties acknowledge that the Amended Complaint is intended to be identical in substance to the Complaint currently on file in the Action, except that it adds (to the already pending alleged federal and New York claims) putative class action overtime pay claims and/or failure to pay wage claims under the state laws of Alabama, Connecticut, Delaware, Florida, Georgia, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Texas, Vermont, and Virginia.

(b)    The Parties hereby stipulate and agree that CTS shall not be required to serve or file a responsive pleading in response to the Amended Complaint until after the Court makes a final ruling on the Parties' Joint Motion.  If, for any reason, (i) the Court denies the Parties' request for Preliminary Approval, (ii) the Court does not enter the Final Approval Order; or (iii) the Effective Date cannot

---

[1] The Amended Complaint shall not contain any allegations against or references to Bed Bath and Beyond Inc., which was included as an improper defendant when the Complaint was filed. The Amended Complaint shall be styled *Ellen Ogaian, individually and on behalf of others similarly situated v. Christmas Tree Shops, Inc.*

occur, Class Counsel shall withdraw the Amended Complaint without prejudice. In the event that Class Counsel withdraws the Amended Complaint pursuant to this paragraph, no Party shall argue that CTS's consent to the filing of the Amended Complaint or Class Counsel's withdrawal of the Amended Complaint has any bearing on the merits of any subsequent motion or effort to amend or dismiss the operative complaint in the Action.

4. **Settlement Classes.**

(a)     The <u>Federal Class</u> shall include all individuals who have filed consents to join the Action (including without limitation all individuals who timely return a valid Claim Form containing a consent to join the Action) and who worked for CTS as a Department Manager in any state in the United States within the three years prior to the date that the Court grants preliminary approval of the Settlement and who, as Department Managers, were classified as exempt by CTS.  The Federal Class Period shall run until the date of such preliminary approval.

(b)     The <u>State Class</u> shall include all individuals employed as Department Managers for CTS during the time periods specified below and who, as Department Managers, were classified as exempt by CTS.  The State Class Periods shall run until the date of preliminary approval.

  i.   In Alabama, Connecticut, Delaware, Georgia, Indiana, Massachusetts, Michigan, New Hampshire, New Jersey, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Texas, Vermont, and Virginia, at any time from three (3) years prior to the filing of the Amended Complaint, through the date that the Court grants preliminary approval of the Settlement.

  ii.  In Maryland at any time from three years and two weeks (158 weeks) years prior to the filing of the Amended Complaint, through the date that the Court grants preliminary approval of the Settlement.

  iii. In Florida and Kentucky at any time from five (5) years prior to the filing of the Amended Complaint, through the date that the Court grants preliminary approval of the Settlement.

  iv.  In Maine, at any time from six (6) years prior to the filing of the Amended Complaint, through the date that the Court grants preliminary approval of the Settlement.

  v.   In New York, at any time from six (6) years prior to February 21, 2012, through the date that the Court grants preliminary approval of the Settlement.

(c)     In the event that, for any reason, the Court does not enter a Final Approval Order or the Effective Date cannot occur, the Court's certification of the Settlement Classes, including the two classes listed above, shall be void and of no effect, and shall not be used for any purpose whatsoever in any further proceeding(s) in any of the above-referenced lawsuits or in any other lawsuit asserting the same or similar claims and causes of action and the Parties will be returned to their respective positions *nunc pro tunc* as of May 30, 2013, the date on which they reached an agreement in principle to settle this litigation.

5.     **Settlement Payment.**

(a)     CTS agrees to pay a total sum not to exceed One Million Three Hundred Forty Thousand and 00/100 Dollars ($1,340,000.00)  (the "Total Settlement Amount") in order to fully and finally resolve the Released Claims as defined in Section 18(c) in their entirety.  The Total Settlement Amount is inclusive of Class Counsel's fees and costs; interest; litigation costs; back wages; liquidated/statutory damages; and Ogaian's and Garrido's service payments, if any.  In addition, the Total Settlement Amount will cover the cost of settlement administration.  Finally, the Total Settlement Amount will cover the full amount of both the participating class members' W-2 withholdings (and state/local withholdings if applicable), and any employer share of payroll taxes on back wage payments made to participating claimants.  The Total Settlement Amount less the items listed in this Section 5(a) is defined as the "Net Settlement Amount."

(b)     Any portion of the Net Settlement Amount that is unclaimed by members of the Settlement Classes who have failed to return a timely and valid Claim Form as required by Section 10(b) or failed to cash a check within the time period allotted under Section 13(a) shall be allocated as follows:

    i.   Fifty-percent (50%) will be transferred to the National Employment Law Project (the "Cy Pres Beneficiary").[2]

    ii.  Fifty-percent (50%) will revert to CTS.

6.     **Attorneys' Fees and Costs.**

(a)     Class Counsel may petition the Court for an award of attorneys' fees and costs in conjunction with the Parties' settlement.  Any such petition shall be filed no later than ten (10) days prior to the date of the final approval hearing.

(b)     Any attorneys' fees and costs awarded in conjunction with the Parties' settlement shall be paid from the Total Settlement Amount and shall reduce the

---

[2]  The Parties agree that the National Employment Law Project is an appropriate Cy Pres Beneficiary.

Net Settlement Amount payable to members of the Settlement Classes pursuant to Sections 12 and 13.  CTS will not oppose any request by Class Counsel for an award of fees and costs that, in total, does not exceed thirty-three percent (33%) of the Total Settlement Amount.

7.    **Service Payments to Named Plaintiffs**

   (a)    Class Counsel may petition for an award of service payments to original named plaintiff Ogaian and Opt-In .  Any such petition shall be filed no later than ten (10) days prior to the date of the final approval hearing.

   (b)    Any service payments awarded to original named plaintiff Ogaian and Opt-In shall be paid from the Total Settlement Amount and shall reduce the Net Settlement Amount payable to members of the Settlement Classes pursuant to Section 13, and shall be in addition to payments that they shall receive as members of the Settlement Classes pursuant to Section 13.  Any such service payments awarded by the Court shall be distributed by the Settlement Administrator in separate checks mailed contemporaneously with the mailing of checks pursuant to Section 13 and shall be reported to state and federal taxing authorities as non-wage income on IRS Form 1099.  CTS will not oppose any request by Class Counsel for service payments to the plaintiffs up to the following amounts:

   i.  Ellen Ogaian:  $7,500.00

   ii.  Mario Garrido:  $5,000.00

8.    **Settlement Administrator.**

   (a)    Class Counsel shall retain The Garden City Group, Inc. ("Garden City Group" or the "Settlement Administrator") to serve as the administrator of the settlement and perform services including without limitation dissemination of notices to eligible class members, analysis of claim forms, calculation of payments due, distribution of awards from the Net Settlement Amount to eligible class members, tax reporting related to settlement, and providing notices of the Parties' settlement to governmental authorities as required by law.

   (b)    The costs of administering the Parties' settlement, including the fees and costs paid to the Settlement Administrator, shall be paid from the Total Settlement Amount and shall reduce the Net Settlement Amount payable to members of the Settlement Classes.  The Parties shall instruct the Settlement Administrator to prepare a binding estimate of fees and costs for all services to be provided in conjunction with the Parties' settlement and this Agreement (the "Administrative Costs") prior to the filing of the Joint Motion.  Upon Final Approval, Class Counsel shall authorize the payment to the Settlement Administrator of the Administrative Costs from the monies on deposit in the Escrow Account as defined in Section 11 upon Final Approval.

9.    **Notices Mandated by Statute.**

(a)    Upon the filing of the Joint Motion, pursuant to Section 2(d), the Parties will instruct the Settlement Administrator to mail notices of the Parties' proposed settlement to an "Appropriate Federal Official" and "Appropriate State Officials" (collectively, "Government Officials") no later than ten (10) days thereafter as required by 28 U.S.C. § 1715.

(b)    The Settlement Administrator shall prepare the notices referenced in the preceding Section, which shall include as exhibits the Joint Motion, this Agreement, and all Complaints filed in the Action.  Such mailings shall also include information regarding the portion of the Net Settlement Amount that the Parties anticipate would be distributed to individuals following the Effective Date.

(c)    The mailings described in this Section shall not be subject to the non-disclosure obligations in Section 16, and neither Party shall be deemed in breach of those non-disclosure obligations as a result of the Settlement Administrator's mailing of such materials to the Government Officials or as a result of any other disclosures made to Government Officials regarding such mailings.

10.    **Distribution of Net Settlement Amount.**

(a)    <u>Mailing of Notices.</u>

Within fourteen days after the Court grants Preliminary Approval of the Parties' proposed settlement, CTS will provide a list of the members of the Settlement Classes to the Settlement Administrator. Within seven days after receiving the list of the members of the Settlement Classes, the Parties shall instruct the Settlement Administrator to compile and mail to members of the Settlement Classes packets containing a notice of the Parties' proposed settlement in the form <u>attached</u> as Tab D ("Notice") and a Consent to Join and Claim Form ("Claim Form") in the form <u>attached</u> as Tab E (the "Notice Packets").  The Settlement Administrator shall send such packets by certified First Class U.S. Mail to each member of each of the Settlement Classes at such individuals' last known address as provided by CTS.  For any returned Notice Packets, the Settlement Administrator shall conduct reasonable address verification efforts consistent with the customary practices in the settlement administration industry.  Forty-five (45) days after this initial mailing, the Settlement Administrator shall perform a second mailing of the Notice Packets to any class member who has not submitted a Claim Form or Request for Exclusion.

(b)    <u>Claim Form.</u>

The Claim Form to be distributed as a part of the Notice Packet shall denote that the individual returning the form 1) consents to become a party plaintiff in the Action, 2) authorizes Class Counsel to file with the Court the Claim Form containing the individual's written consent, and, 3) upon the Effective Date, will

release all Released Claims as defined in Section 18(c) against the Released Parties.

   i.  For a claimant to be eligible to recover, the Claim Form must be timely and valid.  To be timely, it must be signed, dated, and postmarked, or otherwise returned to the Settlement Administrator and received no later than the date set forth in the Notice, which shall be thirty (30) days after the final approval hearing.  To be valid, the Claim Form must be completed in full and signed by the claimant.

   ii.  Upon receipt of a timely unsigned, incomplete, altered, or otherwise deficient Claim Form, the Settlement Administrator shall promptly apprise the individual who returned the Claim Form of its deficiency and provide such individual with a substitute Claim Form that the individual may use to cure the deficiency within twenty (20) days.  A Claim Form that remains deficient as of the twenty-first (21) day after a deficiency letter has been mailed by the Settlement Administrator shall be void, absent a showing of good cause as determined by the Court.  The Parties agree to allow the Settlement Administrator to resolve any challenges regarding the validity of any Claim Form made pursuant to this Section.

   iii.  Any member of the State Class who (a) does not return a Claim Form to the Settlement Administrator in compliance with the preceding paragraph, and (b) does not seek to be excluded from the Parties' settlement prior to the date set forth in the Notice, shall be deemed to release all Released Claims against the Released Parties as defined in Section 18(c) and shall be deemed to have waived any right to receive a payment in conjunction with the Parties' settlement.

   iv.  Any member of the Federal Class who (a) has filed a consent to join the Action prior to the Effective Date, and (b) does not return a Claim Form to the Settlement Administrator in compliance with the Section 10(b)(i), shall be deemed to release all Released Claims against the Released Parties as defined in Section 18(c) and shall be deemed to have waived any right to receive a payment in conjunction with the Parties' settlement.

   v.  Upon the expiration of the period set forth in the Notice in which members of the Settlement Classes may return Claim Forms, the Settlement Administrator shall compile and transmit the timely and valid Claim Forms it has received to Class Counsel (with a copy of all such materials to counsel for CTS), in both an unredacted form and in a form redacted as to the social security numbers of the members of the Settlement Classes, and Class Counsel shall within fourteen days thereafter to file, under seal, the redacted forms with the Court as Notices of consents to join the Action on behalf of the individuals who timely have returned valid claim forms. Class Counsel shall also file, within the same timeframe, any consents to join the Action that Class Counsel has received with or without Claim Forms.

vi.  Upon the expiration of the period set forth in the Notice in which members of the Settlement Classes may return Claim Forms, the Settlement Administrator shall provide a spreadsheet to Class Counsel and counsel for CTS that contains the following information: (i) identifying information for each claimant who submits a Claim Form, including name, address, and the last four digits of his/her Social Security number; (ii) the date each Claim Form was postmarked; (iii) whether the Claim Form was complete or incomplete (and if incomplete, what information was missing).

11.  **Funding of Settlement Account.**

Within fourteen (14) days after the entry of a Preliminary Approval Order, CTS shall pay funds in the amount of the Total Settlement Amount into an interest-bearing account designated by Class Counsel and to be under the control of Class Counsel and designated as a Qualified Settlement Fund pursuant to the Internal Revenue Code (the "Escrow Account") to be held in escrow pending the Effective Date, after which CTS shall have no further interest in the Total Settlement Amount.

(a)  The principal and interest in the Escrow Account (the amount deposited plus interest less any notice and administration costs that have been incurred) shall be returned to CTS within 5 business days of any of the following events: (i) CTS elects to terminate the Settlement in accordance with paragraph 20 below; (ii) the District Court determines not to enter a Final Approval Order; or (iii) a Final Approval Order entered by the District Court is set aside by an appellate court, unless otherwise agreed in writing by the Parties.

(b)  Notwithstanding the preceding paragraph, all funds specified in this Section 11 shall remain in the Escrow Account pending the disposition of any appeal of any Final Approval Order.

12.  **Calculation of Individual Awards.**

Each individual Class Member who submits a timely and valid Claim Form ("Claimant") will receive an amount calculated pursuant to the formula below (his or her "Claim Amount"):

(a)  Using the Company's records, calculate in the aggregate the approximate number of weeks all members of the Settlement Classes were employed as salaried Department Managers during the applicable periods set forth in Section 4(b);

(b)  Using the Company's records, calculate the approximate number of weeks that each Class Member was employed as a salaried Department Manager during the applicable period set forth in Section 4(b);

(c)  For each Class Member, divide the figure calculated pursuant to Section 12(b) by the figure calculated pursuant to Section 12(a) to arrive at the fraction of the

10

Net Settlement Amount that the Class Member is eligible to receive under this Settlement Agreement; and

(d)   Multiply the Net Settlement Amount by the fraction calculated as described in paragraph 12(c) above to determine the amount that the Class Member may claim.

13.   **Payments to Class Members.**

Following the Effective Date, the completion of the administration process, and further order of the Court, Class Counsel shall transfer funds from the Escrow Account to the Settlement Administrator for distribution by mailing checks, less applicable taxes and withholdings, to each member of each of the Settlement Classes who has timely returned a valid Claim Form ("Eligible Claimants").

(a)   Checks issued pursuant to the preceding paragraph shall expire ninety (90) days after they are issued, but a failure by any Eligible Claimant to deposit or cash a check within the time period allotted shall have no effect on that individual's release of Released Claims pursuant to Section 18.  Subject to good cause shown by the Eligible Claimant, the Settlement Administrator may reissue a check for up to an additional ninety (90) days following the original ninety day period.  The Parties will confer in good faith to determine whether good cause has been shown.  Any disputes shall be resolved pursuant to the arbitration provisions set forth in Section 22.

(b)   The Settlement Administrator shall withhold from payments to Eligible Claimants taxes and other sums the Claimant is required to pay by state or federal law.  The Parties agree that the amount paid to each participating member of the Settlement Classes shall be treated as wages for tax purposes.

(c)   The payment of any amount as provided herein to Eligible Claimants shall have no impact on their entitlement to or receipt of any benefits under any CTS policy, practice, or welfare or benefit plan, including without limitation any health plans or 401k plans; or, as allowable by law, to their entitlement or receipt of workers compensation benefits or unemployment compensation. The payment of any amount as provided herein shall not require CTS to make any additional payments under any benefit plans, including without limitations health plans and 401k plans.

(d)   The payment to Eligible Claimants is fully dependent and conditioned upon a full and complete release of all Released Claims as defined in Section 18(c) and set forth in the Claim Form, attached as Tab D.

(e)   Reserve Fund: The parties agree that $60,000 of the QSF will be set aside to cover any correctable errors or omissions, satisfy any claims for relief allowed pursuant to Fed. R. Civ. P. 60(b)(1) or 60(d) and to pay any late claims, otherwise valid except for their lateness, submitted within nine (9) months following the Effective Date ("Reserve Fund").  Fifty percent (50%) of the

Reserve Fund remaining after payment of any late claims and correctable errors or omissions, will be transferred to the Cy Pres Beneficiary as designated in Section 5(b)(i) and fifty percent (50%) will revert to CTS.

14. **Return of Claim Amounts for Opt-Outs.**

For each member of the Settlement Classes who seeks to be excluded from the Parties' settlement prior to the Court order resulting in Final Approval, the entire Claim Amount for that individual shall revert to CTS.  The Settlement Administrator shall transfer to CTS one hundred percent (100%) of the aggregate of all Claim Amounts that revert to CTS pursuant to this paragraph, along with all interest earned on such Claim Amounts while on deposit in the Escrow Account, within fourteen (14) days after Final Approval.

15. **Transfer of Remainder of Funds.**

One hundred eighty (180) days after the Effective Date, the Settlement Administrator shall transfer fifty percent (50%) of the remaining funds it holds in the Escrow Account pertaining to the Parties' settlement or this Agreement to the Cy Pres Beneficiary as designated in Section 5(b)(i).  The funds transferred to the Cy Pres Beneficiary shall include fifty percent (50%) of:  (i) the aggregate of all Claim Amounts forfeited by members of the Settlement Classes who do not timely return Claim Forms as specified in Section 10(b); (ii) the aggregate of all Claim Amounts corresponding to checks that expire pursuant to Section 13(a); and (iii) all interest accrued on the funds deposited into the Escrow Account.  One hundred eighty (180) days after the Effective Date, the Settlement Administrator shall also transfer the other fifty percent (50%) of the remaining funds in the Escrow Account to CTS.  The Final Distribution of Funds shall be deemed to have occurred upon the transfer of funds to the Cy Pres Beneficiary as designated in Section 5(b)(i) and CTS pursuant to this Section 15.

16. **Non-Disclosure.**

Plaintiffs, CTS, and counsel for the respective Parties agree not to disclose or publicize this settlement or its terms and conditions except as required by law to secure approval of this settlement.  Class Counsel shall not make any statements about this settlement on their website or in any other electronic or print media except as provided herein.  To the extent Class Counsel or Plaintiffs are approached by media for public statements, they may state, in substance, only that this matter has been resolved.  CTS also may respond to inquiries from media outlets regarding the settlement by stating, in substance, that the company denies any liability in the action and settled the case in order to avoid the burden of continued litigation.  .  If Class Counsel desires to post a case description on their website, it shall provide as follows:

> HGR and/or KO&L has settled a lawsuit against a national retailer. The lawsuit was brought on behalf of a class of employees who worked as department managers.  Plaintiffs alleged that department managers were misclassified as exempt employees and did not receive payment for overtime in alleged violation of state and federal law.

12

If Class Counsel desires to refer to this settlement in applications it may make to a Court, such applications shall state as follows:

> *Ellen Ogaian, individually and on behalf of others similarly situated v. Christmas Tree Shops Inc.; Civil Action No. 12-1273 (S.D.N.Y.)(settlement $1,340,000.00)*

and may add a parenthetical concerning the ultimate disposition from the Court of any fee and/or cost applications.

(a)  No Party or counsel for any Party shall disclose, acknowledge or make any statement of any kind about any position or statement made during mediation or settlement discussions, except as may be required to secure Preliminary Approval and Final Approval and for the purposes noted in Section 16(a).

(b)  Notwithstanding the foregoing, nothing herein shall prevent Class Counsel from communicating with members of the Settlement Class about the Parties' settlement or the Agreement, and nothing herein shall prevent CTS from communicating with its employees on any subject.

(c)  Additionally, CTS may include in the Notice, and otherwise communicate to settlement class members, the following statement:

CTS believes that it compensates its Department Managers and all other employees fairly and in full compliance with all legal requirements. CTS has decided to settle this lawsuit solely to avoid the continued distraction that it would create from its ability to operate its business. CTS will not take any action against employees who join the Lawsuit or participate in the Settlement.

17.  **Documents and Discovery**

(a)  Within sixty (60) days after the Effective Date, Class Counsel shall take steps necessary to destroy or erase all documents and data produced by CTS to Class Counsel in connection with this Action and which are currently in Class Counsel's possession, custody, or control. Class Counsel shall destroy all documents and data produced by CTS to Class Counsel in the same manner in which Class Counsel destroy data containing personal information of their former clients and employees and in accordance with all applicable legal requirements. Class Counsel shall certify to CTS, in writing, their good faith efforts to comply with their obligations under this provision. Class Counsel may treat this process of destruction/erasure as a case cost. Further, Class Counsel may keep their own work product and filed briefs and pleadings that may refer to, quote, or incorporate documents and data, as well as any documents Class Counsel are required to maintain under the applicable disciplinary and attorney ethics ruling.

18.    **Releases.**

    (a)    Upon the Effective Date, Plaintiffs and all individuals who join the Action as members of the Federal Class shall be deemed to fully, forever, irrevocably and unconditionally release, remise, and discharge Christmas Tree Shops, Inc., its parents (including without limitation Bed Bath and Beyond, Inc.), divisions, subsidiaries, predecessors and successors, and their directors, officers, members, fiduciaries, insurers, employees, attorneys and agents (each in their individual and corporate capacities) (collectively referred to as the "Released Parties"), from any and all suits, actions, causes of action, claims, or demands against the Released Parties or any of them based on putative violations of federal law pertaining to hours of work or payment of wages, including without limitation all claims that were asserted or could have been asserted in the Action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, based on events that occurred or are alleged to have occurred during the period beginning with the three year period prior to the date each member of the Federal Class filed his/her consent to join the Action and ending with the date of entry of a Final Approval Order.  This release shall be conspicuously included in the Claim Form immediately before the signature line.

    a.    Upon the Effective Date, Plaintiffs and all members of the State Classes who do not submit a timely and valid request for exclusion from the State Classes shall be deemed to fully, forever, irrevocably and unconditionally release, remise, and discharge the Released Parties from any and all suits, actions, causes of action, claims, or demands against the Released Parties or any of them based on putative violations of any state, or local law pertaining to hours of work or payment of wages, including without limitation all claims that were asserted or could have been asserted in the Action, or based on the allegations in the Action, regarding events that occurred or are alleged to have occurred during the applicable class period, as defined in Section 4, above.

    b.    The releases described in Sections 18(a) and 18(b) above are collectively referred to as the "Released Claims."

    c.    All individuals who join the Action as members of the Federal Class and all members of the State Classes who do not submit a timely and valid request for exclusion from the State Class are collectively referred to as the "Releasing Class Members."

    d.    The Released Claims also include a release of all claims for attorneys' fees and costs incurred by Releasing Class Members or by Class Counsel in connection with the Action and the Settlement of the Action.

    e.    Plaintiff Ogaian, Opt-In, and Releasing Class Members understand and agree that this release is a full and final release applying to both those Released Claims that are currently known, anticipated, or disclosed and to all those Released Claims that are presently unknown, unanticipated, or undisclosed to any and all Plaintiffs or Releasing Class Members arising out of the alleged facts, circumstances, and

occurrences underlying: (i) the claims set forth in the Action; or (ii) the Released Parties' conduct with respect to the Action.

19.   **Dismissal of Action.**

The Final Approval Order shall provide that upon the Effective Date, the Action shall be dismissed with prejudice and without costs (except as otherwise provided herein) with the Court retaining jurisdiction over the case for purposes of ensuring compliance with the terms of this Settlement Agreement and any order of the Court issued in connection therewith.

20.   **Termination of Settlement Agreement.**

If greater than ten percent (10%) of all members of the Settlement Classes, in the aggregate, seek to be excluded from the Parties' settlement, this Agreement shall be voidable at CTS's option, provided that CTS exercises this option no later than fourteen (14) days prior to the final approval hearing.  If CTS exercises its option to void the Agreement pursuant to this Section 20, the Agreement shall be null and void and of no effect whatsoever, except for Sections 3(b), 4(c), and 11 above.

21.   **Complete Agreement.**

Other than as stated herein, the Parties warrant that no representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement and that they are competent to execute this Agreement and accept full responsibility therefore.  This Agreement contains and constitutes the entire understanding and agreement between the Parties and supersedes all previous oral and written negotiations, agreements, commitments, and writings in connection therewith.  This Agreement may not be amended or modified except by a writing signed by authorized representatives of all Parties.

22.   **Arbitration**

The Parties agree to meet and confer in good faith to resolve any disagreements over the implementation of the terms of this Agreement or any other documents necessary to effectuate the Settlement.  If the meet and confer is not successful, the Parties agree to binding, non-appealable arbitration before the Honorable Kathleen A. Roberts to resolve any disagreements over the implementation of the terms of this Agreement or any other documents necessary to effectuate the Settlement. If ordered by Judge Roberts, the prevailing Party in any such dispute will be awarded the costs of the arbitration and its attorneys' fees.

23.   **Knowing and Voluntary Agreement.**

Ogaian and Garrido each agree that they are entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance.  Each further affirms that s/he has not been coerced, threatened, or intimidated into signing this Agreement; that s/he has been advised to consult with an attorney; and that each of them in fact has consulted

15

with an attorney before signing this Agreement.  Class Counsel represent that they have conducted a thorough investigation into the facts of the Action and have diligently pursued an investigation of the claims asserted on behalf of members of the Settlement Classes against CTS.  Based on their own independent investigation, analysis of information provided by CTS including documents, interviews, and the extensive mediation which led to this settlement, Class Counsel state that they are of the opinion that the settlement with CTS is fair, reasonable, and adequate, and is in the best interest of the members of the Settlement Classes, in light of all known facts and circumstances, including the risks of significant delay and defenses asserted by CTS.

24.    **Notices.**

Any notices issued pursuant to the terms of this Agreement shall be sent to the Parties at the addresses of their respective counsel as follows:

For Plaintiffs to:

Seth R. Lesser, Esq.
Fran L. Rudich, Esq.
Klafter Olsen & Lesser LLP
Two International Drive, Suite 350
Rye Brook, NY  10573
Telephone:   914.934.9200
Facsimile:    914.934.9220
seth.lesser@klafterolsen.com
franrudich@klafterolsen.com

Marc S. Hepworth, Esq.
David A. Roth, Esq.
Charles Gershbaum, Esq.
Hepworth, Gershbaum & Ross, PLLC
192 Lexington Avenue, Suite 802
New York, NY 10016
Telephone:  (212) 545-1199
Fax: (212) 532-3801
mhepworth@hgrlawyers.com
cgershbaum@hgrlawyers.com
droth@hgrlawyers.com

For CTS to:

Jonathan L. Sulds, Esq.
Greenberg Traurig, LLP
MetLife Building, 200 Park Avenue
New York, New York 10166
Telephone: (212) 801-6882
Facsimile:  (212) 801-6400
suldsj@gtlaw.com

and

Kenneth O. Bradley, Esq.
Bed Bath & Beyond Inc.
650 Liberty Ave.
Union NJ  07083
Telephone:  (908) 855-4507
Kenneth.Bradley@bedbath.com

25.     **Severability.**

If any part of this Agreement is found to be illegal, invalid, inoperative or unenforceable in law or equity, such finding shall not affect the validity of any other provisions of this Agreement, which shall be construed, reformed and enforced to effect the purposes thereof to the fullest extent permitted by law.  If one or more of the provisions contained in the Agreement shall for any reason be held to be excessively broad in scope, subject matter or otherwise, so as to be unenforceable at law, the Parties agree that such provision(s) shall be construed to be limited or reduced so as to be enforceable to the maximum extent under the applicable law.

26.     **Governing Law.**

This Agreement shall be governed by New York law, without regard to that state's choice of law provisions or any other jurisdiction, and, when applicable, the laws of the United States, irrespective of where any action may arise or whether any jurisdiction other than New York has accepted jurisdiction of this matter.  The Parties also hereby submit to the jurisdiction of the Court for all purposes relating to the review, approval, and enforcement of the terms of this Agreement.

27.     **Binding on Successors and Assigns**

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, issue, next-of-kin, executors, administrators, successors, and assigns.

**[ INTENTIONALLY LEFT BLANK ]**

28. **Counterparts**

This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signer counterparts, shall constitute one Agreement, which shall be binding upon and effective as to the Parties.

29. **Headings**

The headings used in this Agreement are for convenient reference only, and do not alter or limit the terms of each Section.

**IN WITNESS WHEREOF**, the Parties and Class Counsel each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

CLASS COUNSEL                                   CHRISTMAS TREE SHOPS INC.


_____                By: _____
Seth R. Lesser, Esq.                            Title: _____
Klafter Olsen & Lesser LLP                      Dated: September ___, 2013
Dated: September ___, 2013


_____
Marc S. Hepworth, Esq.
Hepworth, Gershbaum & Roth, PLLC
Dated: September ___, 2013



PLAINTIFF, on behalf of herself and others
similarly situated,



_____                _____
Ellen Ogaian                                    Mario Garrido
Dated: September ___, 2013                      Dated: September ___, 2013

18

28. **Counterparts**

This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signer counterparts, shall constitute one Agreement, which shall be binding upon and effective as to the Parties.

29. **Headings**

The headings used in this Agreement are for convenient reference only, and do not alter or limit the terms of each Section.

**IN WITNESS WHEREOF**, the Parties and Class Counsel each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

CLASS COUNSEL                                CHRISTMAS TREE SHOPS INC.

_____        By: _____
Seth R. Lesser, Esq.                    Title: _Vice President – Legal and General Counsel and_
Klafter Olsen & Lesser LLP              _Assistant Secretary_
Dated: September __, 2013               Dated: September 2, 2013

_____
Marc S. Hepworth, Esq.
Hepworth, Gershbaum & Roth, PLLC
Dated: September __, 2013

PLAINTIFF, on behalf of herself and others
similarly situated,

_____        _____
Ellen Ogaian                            Mario Garrido
Dated: September __, 2013                Dated: September __, 2013

18

28.   **Counterparts**

This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signer counterparts, shall constitute one Agreement, which shall be binding upon and effective as to the Parties.

29.   **Headings**

The headings used in this Agreement are for convenient reference only, and do not alter or limit the terms of each Section.

**IN WITNESS WHEREOF,** the Parties and Class Counsel each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

CLASS COUNSEL                          CHRISTMAS TREE SHOPS INC.


_____           By: _____
Seth R. Lesser, Esq.                 Title: _____
Klafter Olsen & Lesser LLP           Dated: September __, 2013
Dated: September __, 2013



_____
Marc S. Hepworth, Esq.
Hepworth, Gershbaum & Roth, PLLC
Dated: September __, 2013



PLAINTIFF, on behalf of herself and others
similarly situated,

_____           _____
Ellen Ogaian                         Mario Garrido
Dated: September 24, 2013            Dated: September __, 2013

28. **Counterparts**

This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signer counterparts, shall constitute one Agreement, which shall be binding upon and effective as to the Parties.

29. **Headings**

The headings used in this Agreement are for convenient reference only, and do not alter or limit the terms of each Section.

**IN WITNESS WHEREOF**, the Parties and Class Counsel each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

CLASS COUNSEL                                    CHRISTMAS TREE SHOPS INC.


_____                        By: _____
Seth R. Lesser, Esq.                             Title: _____
Klafter Olsen & Lesser LLP                       Dated: September ___, 2013
Dated: September ___, 2013



_____
Marc S. Hepworth, Esq.
Hepworth, Gershbaum & Roth, PLLC
Dated: September ___, 2013



PLAINTIFF, on behalf of herself and others
similarly situated,


_____                        _____
Ellen Ogaian                                     Mario Garrido
Dated: September ___, 2013                        Dated: September 26, 2013


18